McKEE v. INDUSTRIAL COMMISSION et al.

No. 7258.   Decided May 31, 1949.   (206 P. 2d 715.)

See 71 C. J., Workmen's Compensation Acts, sec. 807; 58 Am. Jur. 846. Workmen's compensation, time for filing claims, note, 108 A. L. R. 316.

*Christenson & Christenson*, Provo, for plaintiff.

*Grover A. Giles*, Attorney General, *Stephens, Brayton & Low*, Salt Lake City, *Allan B. Sorenson*, Salt Lake City, for defendants.

LATIMER, Justice.

Certiorari to the Industrial Commission to review an order denying compensation to plaintiff, Bert T. McKee. The commission held that plaintiff had sustained an injury but that his right to compensation was barred by the provisions of Sec. 42-1-92, U. C. A. 1943, which, inter alia, provides:

"If no claim for compensation is filed with the Industrial Commission within three years from the date of the accident or the date

of the last payment of compensation, the right to compensation shall be wholly barred."

Plaintiff was employed intermittently by the Pacific States Cast Iron Pipe Company of Provo, Utah, from June 27, 1936, to February 21, 1944. Sometime in the early part of 1937, while working in the Pipe Company's foundry, he claims to have suffered an injury to his back. He testified that while he was loading pipe into a rack, part of the pipe fell in such a way as to throw him to one side and in so doing he claims to have twisted his back. Experiencing extreme pain he reported to his superintendent who told him to go home and to report to the company doctor in the morning if he did not feel better. On reporting for medical attention the following day, he claims he was informed that a vertebra in his back had been torn loose and he was taped up and sent home. This is at variance with the medical reports which indicate a right inguinal region injury with torn muscles on the right side. Plaintiff was paid compensation by the Pipe Company for six days, after which time the company doctor released him to go back to work. He apparently continued to work regularly for the company until June 21, 1937, at which time he was laid off because of reduced operations. He worked only one day in 1938 and was not again employed by the company until February 7, 1944. In 1942, plaintiff's family physician, Dr. Glen B. Orton, began treating him for a back ailment which the doctor diagnosed to be rheumatism and muscular spasm. However, plaintiff claims not to have experienced any other injury to his back until the 21st day of February, 1944. At this time, while engaged in lifting heavy pipe for the defendant company, he felt something in his back snap causing terrific pain. He reported the sensation to his foreman who told him to go home. The following day he went to a chiropractor, but after being treated by him for four or five days without receiving any relief, plaintiff consulted Dr. Orton about the injury. The treatments given by the doctor apparently afforded him some relief because shortly

thereafter, plaintiff submitted himself to the Pipe Company's doctor for a clearance to go back to work. After the company doctor had made an examination, including X-ray, he informed plaintiff his back had not been injured, but told him he could never do manual labor again because of a muscular condition of his back which he diagnosed to be rheumatism and muscular spasm. On reporting to the Pipe Company for work, plaintiff was told there was no light work for him and so he secured a job as a service station attendant. No claim for compensation or medical expense was made for this injury. Although plaintiff experienced no other serious trouble until 1946, he had recurrent difficulty with his back, attended by severe pain and suffering. Dr. Orton, his family physician, continued to treat him for musclar spasms and rheumatism as he had done prior to the accident. In spite of having treated his back before the injury in 1944, Dr. Orton testified he accepted the Pipe Company doctor's diagnosis of plaintiff's back condition without making X-rays of his own until about June 5, 1946, when plaintiff informed him that he (plaintiff) had noticed his right leg was beginning to drag. Dr. Orton then made some X-rays of his own and from these he concluded there was a weakness in the neural arch of plaintiff's back which the doctor described as a congenital weakness and that a strain or stress on a back with such a weakness would likely cause it to slip or become unstable. After making this examination, Dr. Orton sent the plaintiff to Dr. Paul S. Richards of Bingham Canyon, Utah. Dr. Richards made additional X-rays and confirmed the fact that plaintiff had a congenitally weak back but in addition found evidence of a slipping of the fifth lumbar vertebra. He testified that unless a person in such condition were to submit to a spinal fusion, he would undergo quite a lot of pain and suffering so long as he continued to engage in manual labor.

The sole question to be decided in this case is whether Sec. 42-1-92, U. C. A. 1943, is an effective bar to plaintiff's right to recover compensation. Plaintiff concedes that

more than three years expired from the time of the accident until he filed his application for compensation with the Industrial Commission. He contends, however, that the statute did not begin to run against him until 1947 when he learned for the first time that his suffering was not the result of rheumatism or lumbago. In so arguing, he relies upon the rule announced in *Salt Lake City* v. *Industrial Commission*, 93 Utah 510, 74 P. 2d 657, and *Williams* v. *Industrial Commission*, 95 Utah 376, 81 P. 2d 649. These cases overruled a line of cases from this court which had held that Sec. 104-2-26, Rev. St. 1933, a one year general statute of limitations, commenced to run on industrial accidents from the time of the accident. In the cited cases we held that to follow the rule announced in the earlier cases might permit the statute to run before a cause of action accrued inasmuch as an employer's duty to pay under the Workmen's Compensation Act did not arise until there was an accident and injury and a disability or loss from the injury. We therefore held that the time prescribed in Sec. 104-2-26, U. C. A. 1943, would start to run from the time an employee's cause of action arose and not from the time of the accident.

Subsequent to these cases and in 1939, the legislature of this state enacted a statute of limitations which dealt specifically with actions arising under the Workmen's Compensation Act. This statute is 42-1-92, U. C. A. 1943, which is hereinbefore set forth and which provides that unless an application for compensation is filed with the Industrial Commission within three years from the date of the accident or the date of the last payment of compensation the right to compensation is barred. The language of the statute is clear and leaves no room for doubt. Regardless of the decisions rendered by this court prior to 1939, the law now is that the limitation statute begins to run from the date of the accident or from the date of the last payment of compensation.

Inasmuch as there is a period greater than three years between the date of the accident and the time plaintiff filed

his application for compensation, the decision of the Industrial Commission must be affirmed unless, as plaintiff contends, the statute has either been waived or the Pipe Company is estopped from setting it up in bar of plaintiff's claim. In this regard, plaintiff does not claim he could not have discovered the true nature of his injury immediately after the accident. In fact, he must concede his own medical advisor could have discovered the truth at any time by taking X-ray pictures or by examining those taken by the Pipe Company's doctor. Plaintiff seeks to avoid his own failure to find out the real cause of his trouble by contending that the company doctor either mistakenly or intentionally informed him that there had been no injury to his back; that he had a right to rely and did, in fact, rely upon the company doctor's diagnosis of the condition of his back and in so doing he has been misled to his prejudice.

It is well established that a statute of limitations will not run in favor of one who fraudulently conceals another's right of action against him. There is nothing in the record, however, from which the commission could conclude that the 1944 diagnosis of the company doctor was fraudulently made with intent to deprive plaintiff of his right of action. While the record may support the finding of the commission that plaintiff had suffered an injury to his back, there is no evidence from which it could be concluded that the company doctor knew this and fraudulently informed plaintiff he was merely suffering from lumbago or rheumatism. Dr. Richards who discovered plaintiff's injury in 1947 testified that the X-rays taken by the company doctor immediately after the accident disclosed an injury, but he also declared that the original X-rays were hazy and very indefinite and that he would not want to be held to a close decision on an X-ray of that type. The most plausible explanation to be made of the company doctor's erroneous diagnosis is that it resulted from a failure to possess that degree of skill and care which was necessary

to read X-ray pictures which were not clear and distinct. This does not amount to fraud.

Under these circumstances, the narrow question to be decided is whether the Pipe Company is estopped to set up the statute in bar assuming an error was made by its doctor. Inasmuch as the Industrial Commission held that Sec. 42-1-92, U. C. A. 1943 was a bar to plaintiff's right to compensation, it necessarily rejected plaintiff's theory of estoppel. To affirm, we need only determine whether there is evidence in the record to sustain the commission whereas, if we are to reverse its decision, we must be able to say that, as a matter of law, the facts establish that all elements of estoppel are present. Before plaintiff can prevail upon a theory of estoppel, it is incumbent upon him to establish his reliance upon the company doctor's statement which we shall assume was erroneous. If the evidence permits a finding by the commission that plaintiff did not rely on the statement, then his claim of estoppel necessarily fails.

There is evidence in the record from which the commission could reasonably find that plaintiff did not rely upon the company doctor. It is undisputed that Dr. Orton, plaintiff's family physician, had treated plaintiff for rheumatism and muscle spasm from 1942 until the injury to plaintiff's back was discovered. The accident which produced the injury occurred in 1944. Immediately thereafter plaintiff went to a chiropractor and then to Dr. Orton for treatment. They both failed to discover any injury, although X-rays carefully prepared and examined would have disclosed plaintiff's injured back. It was only after plaintiff was feeling better and thought he was capable of returning to work that he reported to the company doctor. In so doing, plaintiff was not seeking medical aid nor a diagnosis of the cause of the suffering he had endured. Plaintiff and his wife both testified that his only purpose in reporting to the company doctor was to obtain a release in order to get his old job back again. Knowing that plaintiff was claiming to be well

and that he was examining the plaintiff only for fitness to return to work, the doctor would not make as thorough a study of the pictures as he would if he were hired to treat and cure the ailment. The doctor was not seeking to lead plaintiff to believe that his injury was inconsequential or that it would be of short duration as he informed plaintiff that he could never again do manual labor because of the condition of his back. After the company refused his re-employment plaintiff never again sought the aid or assistance of the company doctor. Instead, he returned to Dr. Orton for treatment and informed him that the company doctor had taken X-rays and had declared his back had not been injured. Dr. Orton testified that he accepted this diagnosis as given by plaintiff without corroboration by the company doctor and continued to treat plaintiff for rheumatism and muscular spasm until 1946 when plaintiff informed him that his right leg was beginning to drag. It was only then that X-rays were taken and a thorough investigation made which led to the discovery of the injury. Although plaintiff admits that his own physicians had an equal opportunity of learning the truth, he seeks to excuse their neglect by claiming that they relied upon his report that the company doctor found no injury to his back. We have not been able to find any case, and none has been cited by counsel, which would permit plaintiff to assert an estoppel under these circumstances. A contrary result is indicated in the case of *Indemnity Ins. Co. of North America* v. *Sterling,* Tex. Civ. App., 51 S. W. 2d 788. In that suit it was undisputed that the company physician knew the true physical condition of the employee and knew that he had sustained a compensable injury. It was likewise undisputed that he fraudulently concealed this fact from the employee who would not have entered into a compromise settlement had he been aware of his injury. The court held that these facts did not constitute actionable fraud because the employee had not dealt with the company doctor on a confidential basis; that he did not rely upon the company physician to furnish him information as to his true physical condition;

that he employed a doctor of his own for this purpose and a lawyer to advise him of his legal rights; and that acting on their advice he made the settlement.

We think it is clear in this case that no fiduciary relationship existed between the Pipe Company's doctor and the plaintiff inasmuch as he did not report to the doctor for a diagnosis of his ailment or for medical assistance. By his own admission he believed he had recovered and his sole purpose in going in to see the company doctor was to get a clearance to return to work. He selected his own physicians and looked to medical experts of his own choosing for diagnosis and treatment of his injury. He did not report to the company physician after the accident but went first to a chiropractor and then to Dr. Orton. Dr. Orton, his family physician, had been treating him for an injured back for a period of at least two years before the company doctor took any pictures or advanced any opinion about plaintiff's condition. During this period neither Dr. Orton nor plaintiff could have been relying on any diagnosis made by the company doctor. It was only after plaintiff believed he was physically fit for work that he reported to the company doctor and the company doctor was informed by plaintiff that others had been administering to his ills. Under these circumstances, we believe that the commission could reasonably conclude that plaintiff had relied upon physicians of his own choosing rather than upon the statement of the company doctor, and therefore had failed to establish his plea of estoppel.

The order is affirmed.

PRATT, C. J., and WADE and McDONOUGH, JJ., concur.

WOLFE, J., concurs in the result.