436 P.2d 435

William N. CHRISTIANSEN, Plaintiff and Appellant,

v.

Vincent L. REES, Doe I and Doe II, and the Salt Lake Clinic, a Professional Corporation, Defendants and Respondents.

No. 10731.

Supreme Court of Utah.

Jan. 16, 1968.

Howard & Lewis, Jackson B. Howard, Provo, for appellant.

Skeen, Worsley, Snow & Christensen, John H. Snow, Salt Lake City, for respondents.

CALLISTER, Justice.

This is a malpractice action wherein plaintiff seeks to recover damages for injury suffered due to the alleged negligence of defendants in leaving a broken surgical needle within his body during an operation. The surgical operation was performed in 1955, but plaintiff did not commence this suit until 1965. The court below, having before it the pleadings and plaintiff's deposition, granted defendants' motion for summary judgment for the reason that the action had not been commenced within four years after its accrual as prescribed in 78–12–25(2), U.C.A. 1953.

Upon this appeal, plaintiff urges this court to set aside the summary judgment and adopt the so-called "discovery rule" which is to the effect that where a foreign object is negligently left in a patient's body during a surgical operation and the patient is ignorant of the fact, the cause of action does not accrue, and the statute of limitations does not commence to run, until the date of discovery, or the date when, by the exercise of reasonable diligence the patient should have discovered the presence of such foreign object in his body.

Defendants, on the other hand, seek to have the trial court affirmed and ask this court to follow what they term the "majority rule" which is to the effect that the statute of limitations commences to run at the instant of the negligent act, regardless of when the patient discovers the injury.

Case authority is divided as to the proper rule in cases such as this.[1] It would serve no useful purpose to discuss these divergent opinions. Suffice it to say, this court has read and analyzed them and has reached the conclusion that logic and reason support those authorities which have adopted the discovery rule.[2] It seems somewhat incongruous that an injured per-

1. 80 A.L.R.2d 368.
2. E. g., Billings v. Sisters of Mercy, 86 Idaho 485, 389 P.2d 224 (1964); Morgan v. Grace Hospital, Inc., W.Va., 144 S.E. 2d 156 (1965); Johnson v. St. Patrick's Hospital, Mont., 417 P.2d 469 (1966); Berry v. Branner, Or., 421 P.2d 996 (1966).

son must commence a malpractice action prior to the time he knew, or reasonably should have known, of his injury and right of action.[3] It seems apparent that adherence to the "majority rule" would penalize the conscientious doctor, who would advise his patient of a mistake, and protect a practitioner, who would not reveal his mistake until the statute of limitations became a shield.[4]

■ Therefore, we now hold that, regardless of prior pronouncements,[5] where a foreign object is negligently left in the body of a patient during an operation and the patient is ignorant of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learned of the presence of such foreign object in his body.

■ However, defendants argue that adoption of the foregoing rule is for the legislature and not for this court. They point out that the legislature has specifically provided for discovery exceptions in certain actions [6] but not with respect to the limitation of malpractice actions. Therefore, the legislature, by its inaction in this regard, has endorsed the "majority rule" and rejected the "discovery rule."

This same argument was presented to the Oregon Supreme Court in a similar case.[7] That court, in rejecting the argument, stated:

The sole question presented here is whether a cause of action for medical malpractice accrues at the time of the negligent act or omission, or at the time it was or might have been discovered. * * *

This exact question was determined in a manner contrary to plaintiff's position by a four to three decision of this court in the case of Vaughn v. Langmack, 236 Or. 542, 390 P.2d 142 (1964).

The principal phenomenon of statutory history which convinced the majority in the Vaughn case that it was the intent of the legislature to have the cause of action accrue upon the occurrence of the

3. "It is * * * an ancient maxim of the common law that 'Where there is a right there is a remedy.' What a mockery to say to one, grievously wronged, 'Certainly you had a remedy, but while your debtor concealed from you the fact that you had a right, the law stripped you of your remedy.' " Rosane v. Senger, 112 Colo. 363, 149 P.2d 372, 375 (1944).

4. Note, 12 Wyo.Law Journal 30. This is not to imply any such motive to the defendant surgeon. He did not see or treat the plaintiff after the surgery.

5. Peteler v. Robinson, 81 Utah 535, 17 P.2d 244 (1932).

6. 78–12–26, U.C.A.1953. This section provides, among other things, that an action shall not be deemed to have accrued until the time of the discovery of fraud or mistake or, in an action for the taking, detaining or injury to personal property, the owner has actual knowledge of facts which would put a reasonable man on inquiry.

7. Berry v. Branner, supra, note 2.

malpractice rather than upon its discovery, was the fact that the legislature had expressly adopted the discovery rule as to fraud and deceit but not as to malpractice. The validity of this reasoning is dependent upon the supposition that the legislature, in adopting the discovery principle as to fraud, had in mind undiscovered malpractice as well and, nevertheless, decided against the adoption of the discovery principle as to it. * * *

The fact that the legislature saw fit to clarify the time of accrual with regard to undiscovered fraud does not necessarily mean that it was the original legislative intent that the discovery principle not apply in fraud cases. Where the original statute was ambiguous, is it not just as reasonable to assume that the legislature pointed out the construction they had intended from the outset?

* * * * * *

The contention is made that a decision of this kind amounts to judicial legislation. The legislature, however, did not provide that the time of accrual was when the physician performed the negligent act. The court did. The legislature left the matter undetermined. A determination that the time of accrual is the time of discovery is no more judicial legislation than a determination that it is the time of the commission of the act.

* * *

Furthermore, this court, without benefit of legislative edict, previously has seen fit to make exceptions to the limitations statute in malpractice actions, namely, where there is a continuing treatment after the negligent act [8] or there is a fraudulent concealment.[9]

In the instant case, there is a serious question as to whether, even in applying the discovery doctrine, the action is barred by the four-year statute of limitations. However, upon the record it is our judgment that the question of whether the plaintiff commenced his action within four years after he knew, or should have known, of the presence of the surgical needle in his body is an issue to be resolved by the trier of the facts.

Reversed and remanded for proceedings consistent with the views set forth above. Costs to plaintiff.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent. I cannot agree with the reasoning in Berry v. Branner, the Oregon case upon which the main opinion so heav-

8. Peteler v. Robinson, supra, note 5.

9. Passey v. Budge, 85 Utah 37, 38 P.2d 712 (1934).

ily relies. The upshot of the main opinion here is judicial legislation, no matter how you slice it. It concedes that legislation specifically has made exceptions to the limitations statutes with respect to fraud, mistake, detaining or injuring personalty. This, to me, seems to indicate an indisposition on the part of the legislature to extend the exception area to other limitations statutes.

Although the main opinion specifically restricts itself to medical people who leave sponges, needles and the like in the body, occasioned by surgery, there is no logical or reasonable reason why the next case, involving an error by an attorney, for example, who examines an abstract of title, is not discovered until ten years later when a seller, having for the first time an opportunity to sell his house discovers the negligence of the attorney. The same reasoning could be urged in personal injury cases and others. In other words the limitations statutes can be emasculated simply by judicial fiat in excepting therefrom certain areas and professions which the legislature has not seen fit to except, on the rather tenuous, but not legislative, sanction or approval of the so-called "discovery" theory.

It is obvious that limitations statutes, in their role of repose, may lead to harsh results. But they are there, and it seems to me that the legislature, not the courts, should either make the exceptions,—or simply abolish the limitations statutes without having them whittled away piecemeal by courts that, in an isolated case, decide that such statutes just ain't fair.

I can see why Mr. Christiansen, through no fault of his own, may be entitled to some sort of redress. Trouble is, the legislature as yet has not provided the instrumentalities for it, and it is not the prerogative of this court to enact a statute for it.