Harlow VINCENT and Maxine Vincent,
his wife, Plaintiffs and Respondents,

v.

SALT LAKE COUNTY, Defendant
and Appellant.

No. 15311.

Supreme Court of Utah.

Aug. 7, 1978.

Scott Daniels of Snow, Christensen & Martineau, Salt Lake City, for defendant and appellant.

Thomas A. Duffin, Salt Lake City, for plaintiffs and respondents.

MAUGHAN, Justice:

Plaintiffs Harlow and Maxine Vincent sued defendant Salt Lake County to recover for damages to their garage caused by a leaking county storm drain. A jury trial resulted in a judgment for plaintiffs in the amount of $14,583.47, from which defendant appeals. We affirm the judgment of the trial court. Costs are awarded to respondents. All statutory references are to Utah Code Annotated 1953, as amended.

Defendant argues three points on appeal: 1) plaintiffs' claim is barred by the statute of limitations under the Governmental Immunities Act;[1] 2) the leaking storm drain was a "latent defect," for which immunity is not waived;[2] 3) the trial court erred in its instruction to the jury on nuisance.

The facts are basically undisputed. In 1957, defendant installed a storm drainage system across the Olympus Heights Subdivision. Plaintiffs purchased their lot in 1958, and constructed the home in 1959 and 1960. The storm drain was not uncovered or discovered by plaintiff or the builder at any time during the construction.

Because no easement of record existed, plaintiffs did not know the exact location of the storm drain in relation to their home. Harlow Vincent testified he was aware of the existence of the storm drain, but thought it was along the property line; it was actually one foot away from the footing on the south side of the garage.

In 1971, Mr. Vincent noticed some hairline cracks in the garage wall, but ignored them, since they did not appear serious. In the spring of 1972, plaintiff noticed the cracks had widened. He wondered if the storm drain might be causing them, so he asked Salt Lake County Flood Control to inspect it. A few days later he called again

and was told an inspection had been made and that no correlation existed between the storm drain and the cracks. William Kasworm, the Superintendent of Salt Lake County Flood Control from 1961 through 1972, testified he was called by the Vincents in 1971 or 1972 about the storm drain, and he sent a crew out to investigate. The crew went inside the pipe, and, upon discovering the joints were unsealed, grouted some of the joints. Mr. Kasworm testified that despite the County's knowledge of the unsealed joints and the damage to plaintiff's garage, "We just told him we didn't think it was our problem." However, the evidence established the County knew such joints often leaked water.

The cracks had widened to about one-fourth inch in the spring of 1973, prompting plaintiff to again call Salt Lake County Flood Control. The storm drain was once again inspected, and the County reported no correlation between plaintiffs' problem and the storm drain.

When plaintiff noticed additional cracking in the spring of 1974, he met with the Engineering Coordinator for Salt Lake County Flood Control, but was given "no satisfaction." During the summer of 1974, the wall of the garage began to bow, the beams began to twist, and the roof sagged. In August plaintiffs hired a contractor who excavated along the garage and discovered the leaking pipe. The evidence established the pipe had not been sealed around the joint, and that water had been leaking from it into the soil underneath the foundation of the garage wall. Expert testimony was presented on the effect of the water upon the soil and the footings, from which the jury concluded the leaking pipe was the proximate cause of the settling foundation and damage to plaintiffs' garage.

Upon discovering the pipe was indeed leaking water under the foundation, plaintiff gave written notice on August 30, 1974, of the damage and his claim. Defendant asserts, as it did to the trial court, the

---

1. Sec. 63–30–13 (1967).

2. Sec. 63–30–9 (1967).

notice was beyond the period of limitation set forth in Sec. 63–30–13 of the Governmental Immunities Act. That section, before its amendment in 1978, stated:

> A claim against a political subdivision shall be forever barred unless notice thereof is filed within ninety days after the cause of action arises; . . .

■ The trial court ruled as a matter of law plaintiffs' claim was not barred under Sec. 63–30–13, without specifying in the record his reasons for so doing. In their brief, plaintiffs argue four alternative theories which this Court could apply to affirm the trial court's decision. While the decision could be affirmed on more than one of the theories, we simply hold, under the facts of this particular case, no cause of action arose until plaintiffs actually discovered the storm drain was leaking water underneath the garage foundation, in August of 1974.

Our holding is based upon the following facts: Salt Lake County installed the storm drain before plaintiffs owned the property; no easement of record existed by which plaintiffs could ascertain the location of the pipe; the pipe was not discovered during the construction of the house; plaintiffs were told at least three times over the period of three years the pipe was not causing the damage to the garage; the Superintendent of Salt Lake County Flood Control told plaintiffs the pipe was not the cause of the damage even though he had sent a crew to grout some of the joints; he knew the pipe joints were unsealed, and he knew such joints often leaked water.

This Court stated in *Christiansen v. Rees* : [3]

> It seems somewhat incongruous that an injured person must commence a malpractice action prior to the time he knew, or reasonably should have known, of his injury and right of action.

Likewise, it is incongruous to require plaintiffs to commence an action against the county when the cause of the damage is unknown to plaintiffs, and they have reasonably relied to their detriment upon the county's false representations regarding the leaking pipe. The trial court did not err in holding plaintiffs gave timely written notice on August 30, 1974.

■ Defendant's second point is, the leaking storm drain was a "latent defective condition" within the meaning of Sec. 63–30–9. That section provides:

> Immunity from suit of all governmental entities is waived for any injury caused from a dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement. *Immunity is not waived for latent defective conditions.* [Emphasis added.]

The parties have cited no cases construing the emphasized language of this section, or similar language in the tort claims acts of other states. Defendant states the legislature had in mind conditions such as in this case, when it enacted the above section. We disagree. The term "latent defect" is defined in Black's Law Dictionary (Rev. 4th Ed.1968) as, "A defect which reasonably careful inspection will not reveal." [4]

In the case at hand, there was no defect in the pipe which was not discoverable by a reasonable inspection. Indeed, just the opposite was shown; the county crews discovered the joints were not sealed with watertight fittings; they grouted some of them with cement, obviously because they knew such joints leaked water. No defect existed in the concrete pipe itself which avoided discovery, yet caused the pipe to leak.

■ Defendant's last contention is, the trial court erred by submitting to the jury the following language in its instruction on nuisance:

> A nuisance is a condition, not an act or failure to act on the part of the person responsible for the condition. If the wrongful condition exists, and the person charged therewith is responsible for dam-

---

**3.** 20 Utah 2d 199, 436 P.2d 435 (1968).

**4.** See also *Arrow Transportation Co. v. A. O. Smith Co.,* 75 Wash.2d 843, 454 P.2d 387 (1969); 24 Words and Phrases 553.

ages to others although he may have used the highest possible degree of care to prevent or minimize the deleterious effects. Recovery in an action for a nuisance cannot be defeated by showing that there was no negligence on the part of the defendant.

A nuisance does not rest on the degree of care used, for that presents a question of negligence, but on the degree of danger existing even with the best of care, the question of care or want of care is not involved. Thus, a person who creates or maintains a nuisance is liable for the resulting injury to others, without regard to the degree of care of skill exercised by him to avoid the injury, and notwithstanding that he exercises reasonable or ordinary care and skill, or even the highest possible degree of care.

This instruction is misleading under Utah law, asserts defendant, in that it states negligence is not required in a nuisance action. Defendant cites *Sanford v. University of Utah*,[5] as authority for the law of nuisance in Utah. In that case, we cited Dean Prosser:

> Any of three types of conduct may result in liability for a private nuisance. By far the greater number of such nuisances are intentional. Occasionally they proceed from a malicious desire to do harm for its own sake; but more often they are intentional merely in the sense that the *defendant has created or continued the condition causing the nuisance with full knowledge that the harm to the plaintiff's interests is substantially certain to follow* . . . [Emphasis added.][6]

 In the case before us, the evidence established defendant became aware of the unsealed joints by 1972, when the county crews attempted to grout the inside of the pipe. Defendant knew such joints often leaked water, as was the case here. The County was also aware, from 1972 on, that plaintiffs' garage was settling. We think the evidence was sufficient to allow a jury to conclude defendant maintained the condition causing the nuisance with knowledge the harm to plaintiff was substantially certain to follow.

The trial court did not err in submitting the above instruction, for it correctly states the law regarding the intentional creation or maintenance of a private nuisance.

CROCKETT, Justice, and WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting):

When plaintiff bought their land the storm drain was already in place.

Section 63-30-9, U.C.A., 1953, provides that governmental immunity is not waived for latent defective conditions. According to Webster's New International Dictionary the word latent is defined as follows: "To lie hid or concealed. Not visible or apparent; hidden, dormant."

Bouvier's Law Dictionary defines latent defect thus: "A defect or blemish in any article sold, known to the seller but not apparent to the purchaser, and which cannot be discovered by mere observation, which not being discoverable from mere observation, was concealed from the purchaser."

The drain was a latent defect and under the law, sovereign immunity not being waived, the plaintiffs cannot recover. I would reverse the judgment.

---

**5.** 26 Utah 2d 285, 488 P.2d 741 (1971).

**6.** Id. at 488 P.2d 745, citing Prosser, *Law of Torts* (3d Ed.) Sec. 88, p. 595.