Dale B. MAUGHAN and June Maughan, surviving parents of Alan Maughan, deceased; Glen Barber and Beverly Barber, surviving parents of Gail Barber, deceased; Anthony Camberlango, surviving spouse, Christopher Camberlango and Collette Camberlango, surviving children, heirs of Karen E. Camberlango, deceased; Gordon L. Heaton and Ione Heaton, surviving parents of Renae Heaton, deceased; Magdaline Manzanares, surviving parent of Una Manzanares, deceased; Kenneth Miller and La Ree Miller, surviving parents of Ralph Michael Miller, deceased, Plaintiffs-Appellants,

v.

SW SERVICING, INC., a foreign corporation; Galigher Company, a foreign corporation; and/or Baker Oil Tools, a foreign corporation, aka Galigher Company, Defendants-Appellees.

No. 82–2165.

United States Court of Appeals, Tenth Circuit.

April 5, 1985.

1382

Dale Haralson of Haralson, Kinerk & Morey, Tucson, Ariz. (Roy G. Haslam of Biele, Haslam & Hatch, Salt Lake City, Utah, with him on brief), for plaintiffs-appellants.

Peter W. Billings, Sr., Salt Lake City, Utah (Peter W. Billings, Jr., and Terrie T. McIntosh of Fabian & Clendenin, Salt Lake City, Utah, and Herbert L. Fenster and Charles A. O'Connor, III of McKenna, Conner & Cuneo, Washington, D.C., with him on brief), for defendants-appellees.

Before HOLLOWAY, Chief Judge, and SETH and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The issue in this case is whether a claim involving suspected carcinogens presents an "exceptional circumstance" tolling the Utah statute of limitations until a plaintiff knows or should know of the facts constituting his or her cause of action.

Plaintiffs filed this wrongful death suit on August 28, 1980, alleging that the leukemia that led to the deaths of their children and spouses between 1960 and 1973 was caused by radiation emanating from a uranium processing plant in Monticello, Utah. The trial court granted defendants' motion for summary judgment as to all of the adult plaintiffs on the ground that Utah's two-year statute of limitations for wrongful death actions had run.[1]  Utah Code Ann. § 78–12–28(2) (1953).

■ Utah has adopted statutes of limitations "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981) (quoting *Order of Railroad Telegraphers*

---

1. The parties agreed that, pursuant to Utah Code Ann. § 78–12–36(1), the statute of limitations was tolled as to the minor plaintiffs and their claims were timely filed.

v. *Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). The general rule is that the statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action, regardless of whether the plaintiff knows of the existence of the cause of action. *Becton Dickinson & Co. v. Reese,* 668 P.2d 1254 (Utah 1983). If this rule applies, the statute began to run, at the latest, at the death of the last victim in 1973 and the claim is now time-barred.

■ Plaintiffs argue, however, that the statute was tolled until October 15, 1978, when they allegedly first discovered that the leukemia may have been caused by radiation emanating from the mill, and that the suit therefore is timely. Under Utah law, the discovery rule will be applied in three categories of cases. *Becton Dickinson,* 668 P.2d at 1257. First, in several areas of the law, the discovery rule has been adopted by statute. *See, e.g.,* Utah Code Ann. § 78–14–4 (1953) (medical malpractice); § 78–12–27 (1953) (actions against corporate stockholders or directors). Second, where a party has concealed facts or misled the potential plaintiff, the statute is tolled until the plaintiff knows or should know of the relevant facts. *See, e.g., Vincent v. Salt Lake County,* 583 P.2d 105 (Utah 1978); *Vest v. Bossard,* 700 F.2d 600 (10th Cir.1983). Finally, "where there are exceptional circumstances that would make application of the general rule irrational or unjust, [the Utah Supreme Court] has adopted the discovery rule by judicial action." *Becton Dickinson,* 668 P.2d at 1257 (citing *Myers v. McDonald,* 653 P.2d 84 (Utah 1981)).

■ Plaintiffs do not allege that there is applicable legislation tolling the statute of limitations, nor do they allege active concealment or misrepresentation by the defendants. Thus, their claim is time barred unless it presents an "exceptional circumstance" to which the Utah Supreme Court would apply the discovery rule.[2] In addition, even if the discovery rule applies, plaintiffs must demonstrate that they commenced their action within two years of the time when they knew or with due diligence should have known of the facts constituting their cause of action.

■ The application of the discovery rule is based on a balancing of the hardship the statute of limitations would impose on the plaintiff against the difficulties of proof caused by the passage of time. *Myers,* 635 P.2d at 87. In *Myers,* the plaintiffs alleged that they did not and could not reasonably have been expected to know of their injury—the death of their ward—until after the expiration of the statute of limitations. The court found that, if these allegations were true, they would present exceptional circumstances justifying application of the discovery rule since plaintiffs "could not file an action for damages or even initiate investigative efforts to determine the cause of a death of which they had no knowledge." 635 P.2d at 87. The court reversed the lower court's summary judgment and remanded for a determination of when plaintiffs knew or with due diligence should have known of the facts constituting the cause of action. 635 P.2d at 87. When a plaintiff is aware of the physical injury, however, the statute of limitations ordinarily provides incentive to investigate the cause of that injury to determine if he has a legal cause of action. In such a case, the exceptional circumstanc-

---

**2.** Defendants assert that, because there is no clearly controlling state law precedent, the decision of the district court carries "extraordinary force" on appeal. *See Campbell v. Joint District 28–J,* 704 F.2d 501, 504 (10th Cir.1983). However, even if the issue in this case is unsettled under Utah law, the argument has no force because the district court did not clearly decide the issue. Although the district court expressed its opinion, in dicta, that the discovery rule

would not apply, its decision was based on the finding that, even if the discovery rule applied, the plaintiff's claim still would be time barred. Mem.Op. at 3. In addition, another resident district judge has expressed views contrary to those expressed by the trial court in this case. *See Allen v. United States,* 588 F.Supp. 247, 345 (D.Utah 1984). Under these circumstances, it is inappropriate to defer to the district court's views.

es tolling principle does not apply "unless there are 'exceptional circumstances' or ... an 'exceptional cause of action' that would cause [the plaintiff] not to investigate the cause of his injury or that would hinder the investigation." *Vest v. Bossard*, 700 F.2d 600, 608 (10th Cir.1983) (McKay, J., concurring).

■ Because of the complexity of the scientific data concerning causation of cancer, the disparity of knowledge between plaintiffs and potential defendants, and the often long latency period of the disease, this court concludes that cases involving suspected carcinogens present "exceptional circumstances" justifying application of the discovery rule.[3]

In cases involving suspected carcinogens, the first "injury" occurs when the first cancer cells silently begin their evolution in the body. Often the first symptoms of the injury will not appear for some time. Thus "injury" in the sense of symptoms or suffering may appear much later than the actual onset of disease induced by a carcinogen, and in many cases not until after the applicable statute of limitations has lapsed. This problem, which bears on the policies embodied in the Utah statute of limitations doctrine, is further compounded by the complexities of discovery of or even suspicion as to the causation of the evolving disease.

There are many suspected causes of cancer, many of which are natural or non-negligent and would not give rise to a legal cause of action. Thus a potential plaintiff, on learning that he has cancer, lacks the usual incentive to investigate the possibility that the known injury may give rise to a legal claim. In addition, even if he attempts to determine the cause of the disease, he is confronted with a mass of complex, controversial and rapidly changing scientific data and opinions. Lacking the resources and knowledge necessary to carry out their own research into causation, potential plaintiffs must rely on potential defendants—the government and large commercial enterprises—which have the resources to carry out the necessary studies.

Cases involving suspected carcinogens thus are analogous to medical malpractice cases, a category of exceptional circumstances that has been legislatively codified. *See* Utah Code Ann. § 78–14–4 (1953); *Christiansen v. Rees*, 20 Utah 2d 199, 436 P.2d 435 (1968) (applying discovery rule, prior to the legislative action, in a case in which an object was negligently left in a patient's body during an operation). In both areas, there is a significant disparity in the knowledge of the potential plaintiffs and the potential defendants, and a possibility that a known injury is not a legal one. As the Utah Supreme Court stated in *Foil v. Ballinger*, 601 P.2d 144, 147 (Utah 1979),

[w]hile the recipient may be aware of a disability or dysfunction, there may be, to the untutored understanding of the average layman, no apparent connection between the treatment provided by a physician and the injury suffered.... Indeed, common experience teaches that one often suffers pain and other physical difficulties without knowing or suspecting the true cause, and may, as often happens, ascribe a totally erroneous cause to the manifestations. Even those who are trained in medical science often require the additional expertise of one possessing specialty training to diagnose properly the cause of certain ailments.

Similarly, when a person suffers from cancer he may not understand, without expert assistance, that the disease may have been caused by unnatural elements in the environment. In addition, because of the often

---

**3.** The discovery rule has been applied to toll the statute of limitations until discovery of the injury and its causation in latent disease and medical malpractice cases in numerous jurisdictions. *See, e.g., Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330 (D.D.C.1982); *Louisville v. Johns-Manville Products Corp.*, 580 S.W.2d 497 (Ky.1979); *Ohler v. Tacoma General Hospital*, 92 Wash.2d 507, 598 P.2d 1358 (1979); *Harig v. Johns-Manville Products Corp.*, 284 Md. 70, 394 A.2d 299 (1978); *Schiele v. Hobart Corp.*, 284 Or. 483, 587 P.2d 1010 (1978); *Whitfield v. Roth*, 10 Cal.3d 874, 112 Cal.Rptr. 540, 519 P.2d 588 (1974); *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970); *Miller v. Beech Aircraft Corp.*, 204 Kan. 184, 460 P.2d 535 (1969).

delayed development of the disease, the plaintiff may face enormous difficulties in determining when and where he was exposed to potential carcinogens, if at all.

The difficulty in determining the cause of cancer is amply demonstrated in the record. Some of the plaintiffs moved from Monticello prior to or immediately after the diagnosis of the disease. *See, e.g.,* Record, vol. 8, at 12 (A. Camberlango Depo.). Plaintiffs' physicians told them that the cause of the disease was unknown. Record, vol. 9, at 23, 78, 79 (G. Heaton Depo.); vol. 18, at 12, 13 (I. Heaton Depo.); vol. 12, at 65, 90 (R. Miller Depo.); vol. 8, at 32 (A. Camberlango Depo.). Indeed, the controversy among scientists over the link between low-level radiation and cancer continues. *See, e.g.,* Record, vol. 23, at 10, 14, 15 (Smith Depo.) (stating that no one has established the cause of leukemia); Record, vol. 5, at ¶ 13 (McPhedran Aff.) (stating that it has not been established that low-level radiation exposure causes leukemia).

To adopt a rule that encourages the filing of lawsuits when one develops cancer but has no knowledge of its cause, or which of several possible causes, "is not consistent with the unarguably sound proposition that unfounded claims should be strongly discouraged." *Foil,* 601 P.2d at 148. In this time of crowded dockets, it is pure folly to suggest that the plaintiffs should file suit against all sources of suspected carcinogens, with the attendant economic and social costs, simply to prevent the running of the statute of limitations.

In addition, to hold that the statute begins to run at the time the cancer first develops would encourage the government and the private parties who have relevant information to delay disclosure until after the statute has run, leaving the plaintiffs with no opportunity to raise their claims. As the court stated in *Foil,*

> [i]t would be imprudent to adopt a rule that might tempt some health care providers to fail to advise patients of mistakes that have been made and even to make efforts to suppress knowledge of such mistakes in the hope that the running of the statute of limitations would make a valid cause of action nonactionable.... The law should foster a fulfillment of the duty to disclose so that proper remedial measures can be taken and damage ameliorated.

601 P.2d at 148. Similarly, the law should encourage the government and the commercial users and processors of potential carcinogens promptly to inform the public of all suspected dangers.

Thus, the hardship that the statute of limitations would impose on the plaintiffs in the circumstances of this case outweighs the difficulties of proof caused by the passage of time. The court has already been presented with nine government studies concerning leukemia in the area of Monticello. The defendant cannot show that it will be prejudiced by having to defend a stale claim, since its problems of proof are no greater than those of the plaintiffs. *Myers,* 635 P.2d at 87. In addition, the defendants already must defend identical claims by the minor plaintiffs. The Utah legislature has explicitly struck the balance in favor of tolling where a potential plaintiff is under a disability, regardless of the difficulties of proof. Utah Stat.Ann. § 78–12–36. We find the balance in cases involving suspected carcinogens to be similarly in favor of tolling. Discovery in its most liberal sense is the only reasonable application of the policies of the Utah doctrine of limitations.[4]

---

**4.** Defendants claim that the discovery rule should not be applied in this case because plaintiffs are suing exclusively for wrongful death, an action that is a creature of statute rather than of common law. However, the Utah Supreme Court has already adopted the discovery rule in a case involving a wrongful death claim. *See Myers v. McDonald,* 635 P.2d 84 (Utah 1981). In addition, the fact that the affected parties died from their cancer, making the cause of action one for wrongful death rather than one for personal injury, does not alter the analysis of why application of the discovery rule is appropriate in cases involving suspected carcinogens. The representatives of those who have died are no less hampered in the determination of the cause of the cancer than are plaintiffs who are still living.

■ The discovery rule tolls the statute of limitations until the plaintiff knows or should know of the facts constituting the cause of action, *Myers*, 635 P.2d at 87; *Foil*, 601 P.2d at 149, including the fact of causation. There is a substantive difference between knowledge of causation and mere suspicion. *See Allen v. United States*, 588 F.Supp. 247, 343–45. The statute cannot start running when the plaintiff merely knows or should know that there is a suspected link between a particular substance and cancer in general. The list of suspected carcinogens is seemingly endless, including such substances as saccharin, food dyes, food preservatives, asbestos, and DES. A recent report has even linked exercise to causation of cancer. A rule that the statute begins to run as soon as a plaintiff becomes aware that a particular substance is suspected to cause cancer in some people would be absurd, for it would force the plaintiff to file suit against all suspected sources of carcinogens simply to prevent the statute from running. A plaintiff who did so, without further support for the allegation that a particular carcinogen caused *his* cancer, would be susceptible to dismissal on grounds of frivolity. "The statutes of repose are designed to insulate the judicial process against actions which, once crystallized, have then grown old and stale through the passage of time. They are not intended to stimulate the filing of actions arising from injuries or causes that have not been rationally identified." *Allen*, 588 F.Supp. at 345. Given the complexities of cancer causation, the discovery rule should be liberally applied. Thus, in cases involving suspected carcinogens, the statute must be tolled until the plaintiff knows or should know of facts supporting the likelihood that one particular suspected carcinogen was the cause of his cancer, and has identified the likely source of his exposure to that carcinogen.

■ To succeed in proving that their August 28, 1980 claim was timely filed, therefore, plaintiffs must demonstrate that, as of August 28, 1978, they did not know and a duly diligent plaintiff would not have known that radiation from the uranium mill was the likely cause of their decedents' leukemia. Plaintiffs allege they did not know that the uranium mill was the likely cause of the leukemia until October 15, 1978, when they consulted with a lawyer who had been working on a case involving fall-out from the Nevada test site. The trial court granted defendants' motion for summary judgment on the ground that "[t]here simply is no evidence in the record before this court that the plaintiffs became aware of any facts after August 28, 1978 that established that radiation from the mill caused the decedents' leukemia.... All of the evidence establishing this point was known or should have been known through the exercise of reasonable diligence prior to this date." Mem.Op. at 3.

■ Summary judgment is appropriate only when the moving party has established that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Lindley v. Amoco Production Co.*, 639 F.2d 671, 672 (10th Cir.1981). The motion should not be granted where there are conflicting inferences to be drawn from the affidavits. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). While cases involving statute of limitations defenses frequently lend themselves to summary disposition, a court should not grant summary judgment for the defendant if there is a viable issue of fact as to when the limitations period began. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith*, 494 F.2d 168, 171 (10th Cir.1974); 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2734, at 421 (2d ed. 1983).

■ It is settled law in the majority of circuits that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury. *See. e.g., Williams v. Borden, Inc.*, 637 F.2d 731, 738

(10th Cir.1980);[5] *Ballew v. A.H. Robins Co.*, 688 F.2d 1325 (11th Cir.1982) (reversing summary judgment for factual determination as to whether plaintiff should have known that her injuries were caused by an intrauterine device prior to the time when she was expressly informed of the causal connection by other plaintiffs and their attorney); *Lundy v. Union Carbide Corp.*, 695 F.2d 394 (9th Cir.1982) (finding factual dispute as to whether plaintiff knew his condition was caused by exposure to asbestos, even though plaintiff himself had suggested, prior to expiration of the limitations period, that asbestos might be the cause); *Renfroe v. Eli Lilly & Co.*, 686 F.2d 642 (8th Cir.1982) (upholding refusal to grant summary judgment on question of whether plaintiff should have known that DES caused her cancer). Summary judgment cannot be granted "unless the evidence is so clear that there is no genuine factual issue" that the determinations can be made as a matter of law. *Williams*, 637 F.2d at 738.

We are not convinced that the record, viewed in the light most favorable to the plaintiffs, demonstrates conclusively that plaintiffs knew or should have known of the causal connection between leukemia and the uranium mill tailings in Monticello before August 28, 1978.

■■■ Defendants allege that the "undisputed public knowledge" concerning the link between radiation and leukemia is sufficient to justify summary judgment. Brief for Def. at 24–28. We disagree. Even if the plaintiffs are "chargeable with the contents of public records," *see In Re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir.1979), an issue that we

do not decide, the mere fact that there were public statements concerning the possible link between radiation and leukemia is not enough to establish, as a matter of law, that the plaintiffs should have known that emissions from the uranium processing plant in Monticello were the likely cause of the leukemia of their children and spouse. None of the articles cited by the defendants directly and unambiguously links the Monticello mill tailings with leukemia. Nor can it be said, as a matter of law, that the average layman would understand, after reading that fall-out from atomic bombs causes cancer, that the local uranium mill may have caused decedents' leukemia. As in *In Re Beef*, the leap from a plaintiff's alleged knowledge of the various news articles to actual or constructive knowledge of his or her cause of action involves factual issues which are inappropriate for summary treatment. 600 F.2d at 1171.

The cases cited by the defendants to support this claim involved tolling under the fraudulent concealment doctrine rather than under the exceptional circumstances doctrine. When the claim is one of concealment and the very facts allegedly concealed are available in public records, the argument that the plaintiffs should, as a matter of law, be held to constructive knowledge of their cause of action is much stronger. *See, e.g., United Klans of America v. McGovern*, 621 F.2d 152, 153 n. 5 (5th Cir. 1980) ("defendants have conclusively shown that more than one year before the Klan filed suit, the government lifted the veil of secrecy"); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975) (defendants proved that a duly diligent plaintiff would have considered the abusive practices allegedly

---

5. Defendants cite *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687 (10th Cir.1981), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981), for the proposition that in this circuit due diligence is a question for the court. (Brief for Def. at 30). While this court has found "some room for discretion by the court on the issue of plaintiff's diligence in cases under § 10(b)," *id.* at 693, the court in that

case expressly limited its opinion to "frauds based on material misstatements regarding publicly traded securities." *Id.* at 694 n. 15. The court acknowledged that, as a general proposition, the question of whether a plaintiff should have discovered the basis of his suit under a doctrine of equitable tolling does not lend itself to determination as a matter of law. *Id.* at 693 n. 13.

fraudulently concealed where Congress had held hearings concerning those practices).

■ The impact of the publicity concerning radiation and leukemia must be evaluated in light of the circumstances of the case to determine whether plaintiffs were duly diligent in discovering their cause of action. Relevant factors to be considered include the undisputed fact that several of the plaintiffs in this case did ask their doctors what had caused the leukemia, and all were told that the cause was unknown. Record, vol. 9, at 23, 78, 79 (G. Heaton Depo.); vol. 18, at 12, 13 (I. Heaton Depo.); vol. 12, at 65 (R. Miller Depo.); vol. 8, at 32 (A. Camberlango Depo.). Neither the local doctors nor the doctors consulted in Salt Lake City made the correlation between the leukemia and the uranium mill. Record, vol. 20, at 10, 11 (Goon Depo.); vol. 23, at 9, 10, 24, 25 (Smith Depo.); vol. 19, at 32–34 (Altman Depo.); vol. 21, at 60, 61, 65 (Lahey Depo.); vol. 14, at 45 (Wintrobe Depo.). In addition, the government studies that were produced explicitly reassured the plaintiffs who were aware of them that there was no connection between the mill and the cases of leukemia and that the radiation levels in Monticello were normal. Record, vol. 5 at ¶ 26 (McPhedran Aff.); vol. 6 at ¶ 10 (Potolsky Aff.). These factors may affect when a reasonably diligent plaintiff would have been put on notice to investigate, and whether he then would have discovered the cause of action. Thus, the mere cumulation of "public" information is not sufficient to show, as a matter of law, that the plaintiffs' claim was untimely.

■ Defendants also allege that information given to the plaintiffs during the course of several government investigations into the incidence of leukemia in Monticello should have put the plaintiffs on notice. However, the evidence concerning what the investigators told the plaintiffs during the course of the investigation is ambiguous. There is evidence that they told the plaintiffs they were investigating viral causes of leukemia. Record vol. 5, at

9 (Heath Aff.). In addition, while the evidence demonstrates that the researchers did ask about exposure to X-rays, Record, vol. 5, attachment 5 (McPhedran Aff.), there is conflicting evidence concerning whether they also asked about exposure to other forms of radiation. *Compare* Record, vol. 5, at 8 (McPhedran Aff.), *with* vol. 13 at 45–46 (B. Barber Depo.), and vol. 9 at 23, 25, 67 (G. Heaton Depo.). The evidence concerning whether any of the researchers told the plaintiffs that the mill may have caused the leukemia is ambiguous. Record, vol. 6 at ¶ 8 (Korol Aff.); vol. 5 at ¶¶ 13, 18–20 (McPhedran Aff.); vol. 5 at ¶¶ 23, 32 (Heath Aff.). Because of the conflicting inferences to be drawn from the record, it cannot be said as a matter of law that the plaintiffs should have been aware of the existence of their cause of action as a result of the government investigations.

■ The question of when the plaintiffs knew or should have known of the facts constituting their cause of action presents a genuine issue of material fact, and summary judgment therefore was improperly granted.

We find it unnecessary to determine whether the affidavits of counsel with which plaintiffs sought to supplement the record are properly before this court, since the affidavits are unnecessary for determination of this appeal.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.