**KANSAS CITY POWER & LIGHT COMPANY and Kansas Gas and Electric Company, Plaintiff,**

v.

**PITTSBURG & MIDWAY COAL MINING COMPANY, Kansas Department of Health and Environment, Environmental Protection Agency and Morris Kay, Defendants.**

No. 88–2224–S.

United States District Court, D. Kansas.

May 23, 1989.

Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, Kan., David E. Everson, W. Jane Watson, Kansas City, Mo., James G. di Zerega, Kent R. Olson, The Pittsburg & Midway Coal Mining Co., Englewood, Colo., Forrest E. Short, Short, Gentry & Bishop, Fort Scott, Kan., for Pittsburg and Midway Coal Mining Co.

Yvonne Anderson, Sp. Asst. Atty. Gen., Kansas Dept. of Health and Environment, Topeka, Kan., for Kansas Dept. of Health and Environment.

Karl Zobrist, Michael Thompson, William H. Sanders, Blackwell Sanders Matheny Weary, & Lombardi, Kansas City, Mo., Randy P. Scheer, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, Kan., for plaintiff.

Benjamin L. Burgess, Jr., U.S. Atty., for E.P.A., and Morris Kay.

Leon J. Patton, Asst. U.S. Atty., Kansas City, Kan., Roger Marzulla, Asst. Atty. Gen., Stephen L. Samuels, Environmental Defense Section, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of defendants Environmental Protection Agency and Morris Kay, Regional Administrator of the Environmental Protection Agency, ("EPA") for summary judgment on count I of the first amended complaint. In count I of the amended complaint, plaintiffs seek a declaratory judgment from the court determining what, if any, sulfur dioxide emission regulations apply to plaintiffs' generating facility, known as LaCygne Unit # 1, in LaCygne, Kansas and, if any such regulations apply, when they became effective. Specifically, plaintiff seeks a declaratory judgment on the applicability of the Kansas Administrative Regulation ("K.A.R.") 28–19–31(C), and if it applies when it became applicable to the plaintiff's power plant.

The following facts have been established for the purposes of the present motion.

1. Plaintiff Kansas City Power & Light Company ("KCP & L") began construction of the electric plant involved in this proceeding, LaCygne Unit # 1, in 1969.

2. In June of 1973, LaCygne Unit # 1 went "on line" and began operation.

3. The Clean Air Act provides a comprehensive plan for controlling air pollution. Pursuant to that Act, the EPA identifies certain air pollutants that pose a threat to public health or welfare, and promulgates National Ambient Air Quality Standards ("NAAQS") for those pollutants. The EPA has promulgated such a standard for sulfur dioxide.

4. The state of Kansas developed a State Implementation Plan ("SIP") to achieve and maintain compliance with the NAAQS established by the EPA for certain pollutants. State plans must be approved by the EPA. See 42 U.S.C. § 7410(a)(1), (a)(2). Once the state plan is approved by the EPA, the requirements of the SIP are enforceable by the EPA as federal law under 42 U.S.C. § 7413.

5. K.A.R. 28–19–31(C) is part of the EPA-approved Kansas SIP. This regulation states:

> (C) No person responsible for operation of any indirect heating equipment having a heat input of 250 million BTU/hr or greater shall cause or permit the emission of more than 1.5 pounds of sulfur per million BTU of heat input per hour.

It is undisputed that LaCygne Unit # 1 is indirect heating equipment having a heat input of 250 million BTU/hr or greater.

Also, the EPA-approved Kansas SIP provided for certain exemptions from the regulations. K.A.R. 28–19–32(D) provides such an exemption, and states:

> (D) Indirect heating equipment which was existing on January 1, 1972, shall be exempt from the provisions of regulations 28–19–31(C), 28–19–31(D) and 28–19–31(E) except that the provisions of 28–19–31(C) shall apply to all existing equipment for which the annual emissions of sulfur oxides are determined to

be increased by a factor of two (2) or more times the amount of such emissions calculated to be discharged during calendar year 1971 or the first 12 months of operation of any unit placed in operation during that year, provided that equipment which burns fuels other than natural gas less than 2,000 hours during any year shall be exempt from the provisions of 28–19–31(C) during that year.

Under K.A.R. 28–19–7, a unit is "existing" on a particular date if it is an operation, under construction, or under contract for construction on that date. K.A.R. 28–19–32(D) was repealed in May, 1981.

5. LaCygne Unit # 1 was an existing unit on January 1, 1972.

6. In the summer of 1977, a conflict developed between the EPA and the Kansas Department of Health and Environment ("KDHE") regarding the interpretation of exemption (D) and the applicability of K.A.R. 28–19–31(C) to LaCygne Unit # 1. KDHE is the state agency responsible for enforcing the SIP.

7. On July 21, 1977, KDHE sent a letter to Mr. Wayne Johnson, then-manager of production for plaintiff KCP & L, indicating that exemption (D) was available to plaintiffs' LaCygne Unit # 1. The letter stated:

> [T]he Department believes that Unit Number 1 could operate under the exemption provisions of Regulation 28–19–32 D until such time as the annual emissions of sulfur oxides have increased by a factor of two or more times the amount of such emissions calculated to be discharged from the unit during its first 12 months of operation. If you wish to establish that this unit is being operated under the exemption provisions of 28–19–32 D, therefore, [sic] we request that you submit data for the first 12 months of operation of the unit showing the hours of operation, coal consumption and coal characteristics including BTU availability and sulfur content. If it is demonstrated that the unit is operating under a Regulation 28–19–32 D exemption, there is no state requirement that the emissions be tested for sulfur emissions.

8. On August 24, 1977, the director of EPA's enforcement division sent a letter to the director of the division of environment for the KDHE. In that letter, the EPA stated:

> This office has reviewed Regulations 28–19–31(C) and 28–19–32(D). Our interpretation of these regulations, based on the fact that LaCygne Unit # 1 was not operating during 1971, is that the exemption in Regulation 28–19–32(D) cannot apply to LaCygne Unit # 1.

Under the EPA's interpretation, a unit must have been existing and operating in 1971 for the exemption to apply.

9. On April 25, 1988, plaintiffs filed the present lawsuit. The lawsuit involves a contract for the purchase of coal between plaintiffs and defendant Pittsburg & Midway Coal Mining Company. One of the issues involved in the lawsuit is the date when, if ever, K.A.R. 28–19–31(C) became applicable to plaintiffs' LaCygne Unit # 1. Plaintiffs seek declaratory judgment regarding this issue in count 1 of their amended complaint. Because of the dispute between the state and federal agencies about the interpretation of these regulations, plaintiffs named EPA and KDHE as defendants. The EPA now seeks summary judgment on this issue.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for

summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

Although the court believes that defendant EPA's interpretation of the exemption found in K.A.R. 28–19–32(D) follows the plain meaning of the language used in that exemption, the court is not required to decide which agency's interpretation is correct to resolve the pending motion. Regardless of whether the court finds KDHE's or EPA's interpretation of the exemption to be the correct one, plaintiffs have failed to show that exemption (D) was ever applicable to LaCygne Unit # 1.

Under the interpretation given exemption (D) by the EPA, exemption (D) would never apply to LaCygne Unit # 1 because the unit never operated at any time in 1971. The plain language of exemption (D) states that a unit will be exempt from the regulations set forth in 28–19–31(C) (sulfur oxide standards) unless the sulfur oxide emissions for that unit "increased by a factor of two (2) or more times the amount of such emissions calculated to be discharged during calendar year 1971 or the first 12 months of operation of any unit placed in operation during that year, . . ." Since LaCygne Unit # 1 was not placed in operation during 1971, plaintiffs cannot establish a baseline year to apply exemption (D). Therefore, under the EPA's interpretation of the regu-

lations, exemption (D) was never available to plaintiffs regarding their LaCygne Unit # 1, and thus K.A.R. 28–19–31(C) was always applicable to that power unit.

Under the KDHE's interpretation, exemption (D) was conditionally available to plaintiffs. To receive the benefits of exemption (D), however, the KDHE instructed plaintiffs that they were required to submit data regarding their first twelve months of operation. A letter from the KDHE to plaintiff KCP & L indicated that KCP & L was required to submit data regarding the unit's hours of operation, coal consumption and coal characteristics during its first twelve months of operation. KDHE needed this information to establish a baseline year for applying the exemption set out in 28–19–32(D) *. Plaintiffs have failed to present any evidence that they ever complied with these conditions precedent to the availability of exemption (D). Plaintiffs have submitted documents of their permit application dated December 6, 1972, which provided information of expected sulfur emissions. However, this application does not give data on actual emissions or the data requested by KDHE in the July 21, 1977 letter. The only other information plaintiffs provided KDHE was information regarding emissions during the period June 1974 through May 1977. *See* Johnson Deposition, Exhibit 1 to plaintiffs' response, at 162–64. Thus, plaintiffs have presented no evidence that they ever submitted the requested data regarding the initial twelve months of operation from which KDHE could establish a baseline year for the application of exemption (D). Therefore, even under KDHE's interpretation, plaintiffs were never entitled to have the exemption apply to LaCygne Unit # 1.

The court finds that under either the federal agency's interpretation or the state agency's interpretation of the regulations at issue, plaintiffs' LaCygne Unit # 1 was subject to the regulation set out in K.A.R. 28–19–31(C). Thus, the court will grant

---

* Under either agency's interpretation, a baseline year is used to compare a unit's current emissions with its emissions during the baseline year. If the current emissions reflected an in-

crease by a factor of two or more times the amount of emissions during the baseline year, the exemption would not be available to that unit.

defendant EPA's motion for summary judgment.

IT IS BY THE COURT THEREFORE ORDERED that defendant Environmental Protection Agency's motion for summary judgment on count I is granted. The court finds that K.A.R. 28–19–31(C) is applicable to plaintiffs' LaCygne Unit #1, and has been applicable from the time of the unit's initial operation. IT IS FURTHER ORDERED that defendants Environmental Protection Agency and Morris Kay are dismissed as party defendants in this action.