**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHARLES BRYER,

      Plaintiff - Appellant,

v.

CONOCOPHILLIPS, CO.;
PHILLIPS 66, CO.,

      Defendants - Appellees.

No. 17-6114
(D.C. No. 5:15-CV-01218-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

This appeal involves an issue of timeliness. The plaintiff, Mr. Charles Bryer, lived near an oil refinery that emitted a chemical known as benzene. Years later, he was diagnosed with a form of leukemia known as Acute Myeloid Leukemia.

Mr. Bryer sued the owner of the refinery, ConocoPhillips, for negligence, negligence per se, and strict liability. But he waited to sue until roughly nine years after his diagnosis. Because a two-year limitations

---

[*]     This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and Tenth Cir. R. 32.1(A).

period exists for these claims, the district court dismissed the suit based on timeliness. We affirm.

## I.  Background

Mr. Bryer grew up in Ponca City, Oklahoma, near ConocoPhillips's refinery. For part of that time, Mr. Bryer also worked near the refinery. While living and working near the refinery, Mr. Bryer experienced symptoms—such as trouble breathing and a burning sensation in his eyes—from emissions generated by the refinery. These symptoms led Mr. Bryer to move away from the refinery in 1975.

Mr. Bryer was not alone, and many Ponca City citizens expressed concerns about the refinery. These concerns led a group of Ponca City residents to bring a class-action suit against ConocoPhillips, claiming that the refinery had emitted carcinogenic chemicals, including benzene. The suit focused on property damage, but the plaintiffs also alleged that the refinery's emissions had caused or increased the risk of various diseases, including cancer.

ConocoPhillips settled and paid members of the class in 1990. Mr. Bryer was one of the class members receiving a payment from the settlement. He knew at the time that the payment was to compensate for exposure to pollutants emitted by the refinery.

Roughly sixteen years later (2006), a physician diagnosed Mr. Bryer with Acute Myeloid Leukemia, telling him that benzene exposure from his

residences and workplaces had "likely contributed to" his leukemia. Appellant's App'x at 132. Mr. Bryer did not follow up with his doctors about the cause or source of his cancer.

In 2015, Mr. Bryer met Ms. Samantha Hall, who had sued ConocoPhillips. Ms. Hall told Mr. Bryer that a connection existed between the refinery's emissions and Acute Myeloid Leukemia. Later that year, Mr. Bryer sued ConocoPhillips, attributing his leukemia to the refinery's emissions of benzene.

## II. Procedural History

In district court, ConocoPhillips moved for summary judgment, arguing that the claim had accrued in 2006, which is when Mr. Bryer had been diagnosed with leukemia. Because a two-year period of limitations existed, ConocoPhillips argued that the suit was time-barred. Mr. Bryer argued that

- his claim had not accrued until his meeting with Ms. Hall in 2015 and

- the doctrine of quasi-estoppel prevented ConocoPhillips from raising a timeliness defense.

The district court granted summary judgment to ConocoPhillips, concluding that

- the claim was untimely because Mr. Bryer should have known the underlying facts more than two years before he sued and

- quasi-estoppel did not apply because ConocoPhillips had not advanced inconsistent positions.

3

Mr. Bryer appeals the grant of summary judgment.

## III. Standard of Review

We engage in de novo review, considering the evidence in the light most favorable to Mr. Bryer. *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008). We must uphold the grant of summary judgment if the evidence points only one way and is not susceptible to a reasonable inference that the suit is timely. *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013).

## IV. Is the suit barred by the statute of limitations?

As both parties acknowledge, we apply Oklahoma law on substantive aspects of our timeliness inquiry, including Oklahoma's rules on tolling. *Id.* at 1210.[1] On procedural aspects of this inquiry, however, we apply federal law. *Budinich v. Becton Dickinson & Co.*, 807 F.2d 155, 158 (10th Cir. 1986) (per curiam).

The parties agree on the applicability of Oklahoma's two-year period of limitations for all of Mr. Bryer's claims. Okla. Stat. tit. 12, § 95(A)(3). The suit began in 2015. Therefore, the suit would ordinarily be considered timely only if the cause of action had accrued since 2013. Mr. Bryer argues

---

[1] We strive to interpret Oklahoma law in the same manner that the Oklahoma Supreme Court would. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

4

that the cause of action accrued in 2015; ConocoPhillips argues that the cause of action accrued in 2006.

## A. The Discovery Rule

The discovery rule tolls the statute of limitations until the plaintiff knows, or in the exercise of reasonable diligence should know, the facts underlying the cause of action. *Watkins v. Cent. State Griffin Mem'l Hosp.*, 377 P.3d 124, 132 (Okla. 2016). Under this standard, a plaintiff "is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence." *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984).

When the discovery rule applies, the statute of limitations is tolled until the plaintiff knows or should know of the injury and the cause of the injury. *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1189-90 (Okla. 2011). Knowledge of the injury and its cause would often be sufficient. But here recognition of a cause of action would also require knowing the source of the benzene. We may assume, for the sake of argument, that uncertainty about the source of the emissions could toll the statute of limitations. Under this assumption, the discovery rule would have tolled the statute of limitations until Mr. Bryer knew or should have known of

- his injury (that he had leukemia),

- the cause of his injury (that the leukemia had been caused by benzene exposure), and

5

- the source of the benzene (that ConocoPhillips's refinery had emitted the benzene causing the leukemia).

Both parties assume that the discovery rule applies. For the sake of argument, we too may draw the same assumption.

## B. Application of the Discovery Rule

As noted above, summary judgment to ConocoPhillips was appropriate if the undisputed evidence showed that Mr. Bryer should reasonably have known before 2013: (1) his injury, (2) the cause of the injury, and (3) the source of the benzene emissions.

### 1. Injury

It is undisputed that Mr. Bryer knew of his injury in 2006—nine years before he sued ConocoPhillips—when his doctors diagnosed him with leukemia.

### 2. Cause

It is also undisputed that Mr. Bryer knew the cause of his leukemia (benzene exposure) in 2006, when his doctor told him that exposure to benzene had "likely contributed to" his leukemia. Appellant's App'x at 132; *see Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (stating that the plaintiff was aware of the cause of her symptoms when her

6

doctor told her that a certain chemical was "quite possib[ly]" responsible for her symptoms).[2]

### 3.    Source

Mr. Bryer argues that he did not know the source of the benzene until 2015, when he spoke with Ms. Hall. This argument creates two issues:

1.    When did Mr. Bryer know that the refinery emitted benzene?

2.    When did he know that the refinery's benzene emissions were the likely cause of his leukemia?

### a.    Knowledge of Benzene Emissions from the Refinery

Mr. Bryer should have known by 2006 that the refinery emitted benzene. Mr. Bryer argues in his reply brief that he could not have known that the Ponca City refinery's emissions had included benzene. Mr. Bryer forfeited this argument by failing to raise it in his opening brief. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).[3]

Mr. Bryer's argument would fail even if we were to overlook the forfeiture. Mr. Bryer knew not only that the refinery had emitted a

---

[2]    Mr. Bryer contends that the limitations period does not begin to run until an expert expresses an opinion on causation. For the sake of argument, we assume that Mr. Bryer is right. But this assumption does not help him because an expert did express an opinion on causation in 2006 when his physician attributed the leukemia to benzene exposure.

[3]    When an appellant omits an argument in the opening brief, we have sometimes referred to the omission as a forfeiture and sometimes as a waiver. *Compare Bronson*, 500 F.3d at 1104 (forfeiture), *with Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) (waiver).

significant volume of chemicals but also that these emissions had included

benzene. For example, Mr. Bryer was aware that

- other Ponca City residents had expressed concerns about the refinery's emissions and their impact on health and the environment and

- these concerns had led to a class-action complaint alleging harmful levels of benzene emissions from the refinery.

Other sources of information were also available to Mr. Bryer before 2013. For example, multiple articles had noted the emission of benzene from the refinery. In addition, Mr. Bryer was a member of the class-action suit against ConocoPhillips, which alleged that the Ponca City refinery had emitted harmful levels of benzene that increased the class members' risk of health problems. And the eventual settlement agreement acknowledged that all class members had been advised by their attorneys and a medical advisor that the ConocoPhillips refinery had caused, or may cause, cancer or an increased risk of cancer.[4] Though Mr. Bryer might not have read the settlement agreement, he knew when he received his settlement check that ConocoPhillips was settling because the refinery had polluted the air and groundwater.

Of course, these facts do not establish that the refinery's benzene emissions were sufficiently concentrated to be harmful; indeed, that is the

---

[4] Mr. Bryer asserts that he should not have been expected to remember the terms in a settlement agreement that he signed sixteen years earlier. But a reasonably diligent plaintiff could have obtained a settlement agreement that he or she had signed.

8

ultimate question on the merits. And Mr. Bryer's knowledge of *allegations* of high levels of benzene emissions did not provide him with certain *knowledge* of the refinery's high emissions of benzene. But Mr. Bryer did not need "conclusive evidence." *Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). Instead, he needed enough information to put him on notice that he had a cause of action against ConocoPhillips. Based on the available information, Mr. Bryer knew or should have known that the refinery's emissions had included benzene.

### b.     Knowledge of the Refinery as the Likely Source

For a cause of action, Mr. Bryer also needed to know that the refinery had been the likely source of the benzene. *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). Mr. Bryer should have been able to obtain this knowledge before 2013.

Mr. Bryer was diagnosed with leukemia in 2006 and told that the likely cause was benzene exposure from his residences and workplaces. In addition to this statement, Mr. Bryer had his own recollection of symptoms from the refinery's emissions, knowledge that the refinery had emitted benzene, awareness of the public controversy surrounding the refinery's emissions, and his own participation in a class-action suit alleging that ConocoPhillips's benzene emissions had increased the risk of cancer. With such information, Mr. Bryer could reasonably have known before 2013 that

9

his leukemia had likely been caused by benzene emissions coming from ConocoPhillips's refinery.

Mr. Bryer relies primarily on *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381 (10th Cir. 1985). In *Maughan*, the court relaxed Utah's discovery rule for cases involving suspected carcinogens because

- such cases frequently involve "a mass of complex, controversial and rapidly changing scientific data" and

- plaintiffs "may face enormous difficulties in determining when and where [they were] exposed to potential carcinogens."

758 F.2d at 1385-86. The court stated that when the suspected cause is a carcinogen, "the statute must be tolled until the plaintiff knows or should know of facts supporting the likelihood that one particular suspected carcinogen was the cause of his cancer, *and has identified the likely source of his exposure to that carcinogen*." *Id.* at 1387 (emphasis added). Mr. Bryer does not dispute the first part of that test, for he acknowledges that benzene caused the leukemia. But he invokes the second part of the test, arguing that he could not have identified the refinery as the likely source of his exposure to benzene.[5]

In *Maughan*, the court relied largely on scientific uncertainty about the cause of the cancer. There the plaintiffs attributed the cancer to

---

[5] Mr. Bryer argues in his reply brief that the cancer might have originated from exposure to benzene at his other jobs. But Mr. Bryer forfeited this argument by waiting to raise it for the first time in his reply brief. *See* p. 7 & note 3, above.

radiation from the defendant's uranium mill. But the doctors had told the plaintiffs that the cause of the cancer was "unknown," and the link between low levels of radiation and cancer had not been scientifically established. *Id.* at 1386.

The *Maughan* court added that even if the link between radiation and cancer had been established, the plaintiffs lacked information tying their cancers to the *defendant's* radiation:

> [T]he mere fact that there were public statements concerning the possible link between radiation and leukemia is not enough to establish, as a matter of law, that the plaintiffs should have known that emissions from the uranium processing plant in Monticello were the likely cause of the leukemia of their children and spouse. None of the articles cited by the defendants directly and unambiguously links the Monticello mill tailings with leukemia. Nor can it be said, as a matter of law, that the average layman would understand, after reading that fall-out from atomic bombs causes cancer, that the local uranium mill may have caused decedents' leukemia.

*Id.* at 1388. The court pointed to government studies, which had reassured the plaintiffs of (1) the absence of any connection between the mill and the cases of leukemia and (2) the existence of normal radiation levels at the mill. *Id.* at 1389. Mr. Bryer analogizes these reassurances to ConocoPhillips's public statements about the absence of danger from the refinery's emissions.

Based on *Maughan*, Mr. Bryer argues that even though the carcinogenic potential of benzene was well known, he lacked enough

11

information tying the refinery to his leukemia. *Maughan*'s language is broad, but there are two problems with Mr. Bryer's argument:

1.  Unlike the plaintiffs in *Maughan*, Mr. Bryer had ample information identifying the refinery as a likely source of the benzene that caused his cancer.

2.  Mr. Bryer has not provided evidence of other plausible sources of exposure to sufficiently high concentrations of benzene.

First, there is far less scientific uncertainty here than in *Maughan*. In *Maughan*, the cause of the cancer was not known, so it was inherently difficult for the plaintiffs to attribute their cancer to the defendant's mill. But Mr. Bryer *was* able to tie his injury to ConocoPhillips's refinery. A physician told him not only that benzene had likely caused his cancer but also that the exposure had likely come from his residences and workplaces. This explanation pointed to the refinery because Mr. Bryer had lived and worked near the refinery when he experienced the symptoms from chemical emissions. And Mr. Bryer participated in a class-action suit against ConocoPhillips, which attributed cancer to benzene emissions from the Ponca City refinery. Together, the facts known and accessible to Mr. Bryer diminished the scientific uncertainty that the plaintiffs in *Maughan* had faced. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1349-50 (10th Cir. 2008) (distinguishing *Maughan* because the plaintiff in *Grynberg* had not faced "similar scientific uncertainty or lack of expertise").

Second, Mr. Bryer has not supplied a plausible alternative to the refinery as the source of the benzene. For example, he does not give any details on whether his other jobs exposed him to benzene and, if so, how much. As a result, the refinery is the only plausible source based on the information in the summary-judgment record. *See Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1270-71 (10th Cir. 2002) (holding that the plaintiffs had sufficient information when they discovered contaminants in their well with "reason to suspect the source might have been the neighboring property" because they knew that various chemicals had been used on the neighboring property); *accord Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543-44 (2d Cir. 1999) (holding that a claim accrued when the plaintiff knew that he "may have been exposed to radiation" at his workplace, that he had leukemia, and that a link existed between leukemia and radiation exposure).

In addition, Mr. Bryer does not identify any evidence of information learned since 2013 about the likelihood of the refinery as the source of his leukemia. Mr. Bryer states that in 2015, he overheard Ms. Samantha Hall note a connection between the refinery's emissions and Acute Myeloid Leukemia. Mr. Bryer then contacted Ms. Hall to obtain additional information, leading him to file the complaint in this case. But Ms. Hall simply provided a contact with her law firm, alerting Mr. Bryer to the fact that others had also accused ConocoPhillips of causing their cancers.

In essence, everything Mr. Bryer knows about his case now was accessible to him before 2013; there is nothing that Mr. Bryer alleges now that he could not have alleged before. Therefore, he could have brought his suit before 2013 and the suit is barred by the statute of limitations. *See Samuel Roberts Noble Found. v. Vick*, 840 P.2d 619, 625 (Okla. 1992) ("The operative date [for the discovery-rule inquiry] is that date on which plaintiff could have brought suit.").

\* \* \*

In summary, Mr. Bryer knew or should have known before 2013 that

- he had leukemia,

- his leukemia had likely been caused by exposure to benzene,

- his exposure to benzene likely came from his residences and workplaces,

- he had lived and worked near the Ponca City refinery for much of his life,

- he had experienced symptoms while living and working near the refinery,

- the refinery had emitted benzene, and

- ConocoPhillips had settled a lawsuit—in which Mr. Bryer was a class member and received a settlement payment—alleging that the refinery had emitted toxic levels of benzene that caused or increased the risk of cancer.

Given these facts, Mr. Bryer was on notice before 2013 of the facts giving rise to his claim. Therefore, the 2015 suit is barred by Oklahoma's two-year statute of limitations.

14

## V.     Is ConocoPhillips's statute-of-limitations defense barred by quasi-estoppel?

Mr. Bryer also argues that ConocoPhillips's denial of culpability prevents assertion of the statute of limitations. We disagree.

Mr. Bryer invokes the doctrine of quasi-estoppel, which "appeals to the conscience of the court to prevent injustice by precluding a party from asserting a right inconsistent with a position previously taken by him." *Willard v. Ward*, 875 P.2d 441, 443 (Okla. Civ. App. 1994). Mr. Bryer insists that ConocoPhillips is trying to assert a right (the statute-of-limitations defense) that is inconsistent with its previous position (its longstanding denial that the refinery caused cancer). According to Mr. Bryer, it is inconsistent for ConocoPhillips to deny that its refinery causes leukemia and then say that Mr. Bryer should have known years earlier that the refinery had caused his leukemia.

The Oklahoma Supreme Court recognizes three circumstances in which estoppel can be used to avoid a statute-of-limitations defense:

1.     The defendant has made "'some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay action beyond the statutory period.'"

2.     The defendant has made "'an express and repeated admission of liability in conjunction with promises of payment, settlement or performance.'"

3.     The defendant has engaged in "'any false, fraudulent or misleading conduct or some affirmative act of concealment to

15

exclude suspicion and preclude inquiry, which induces one to refrain from timely bringing an action.'"

*Watkins v. Cent. State Griffin Mem'l Hosp.*, 377 P.3d 124, 131 & n.18 (Okla. 2016) (quoting *Jarvis v. City of Stillwater*, 732 P.2d 470, 472-73 (Okla. 1987)).

Mr. Bryer cannot fit his facts into any of the three categories. To avoid this difficulty, Mr. Bryer urges another form of estoppel, quasi-estoppel. But Oklahoma's "[e]xceptions to statutes of limitations are strictly construed and are not enlarged on consideration of apparent hardship or inconvenience." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016). And the Oklahoma courts have never extended quasi-estoppel to a statute-of-limitations case. Therefore, we decline to recognize a new exception in Oklahoma to the statute of limitations. *See Hogan v. Okla. Dep't of Corr.*, 172 F.3d 878, at *2 (10th Cir. 1999) (unpublished) ("Absent affirmative indication that the State of Oklahoma recognizes equitable tolling in such a case, we decline to impute such a doctrine to the state.").

## VI.    Conclusion

We conclude that

- Mr. Bryer had sufficient information to bring his claim against ConocoPhillips more than two years before the filing of the complaint and

- the doctrine of quasi-estoppel does not apply.

16

These conclusions render the complaint untimely, and we affirm the grant of summary judgment to ConocoPhillips.

Entered for the Court


Robert E. Bacharach
Circuit Judge